First case is Applied Biokinetics v. CVS and Mueller Sports Medicine, 2022, 2038, 39, and 40. Mr. Katz. Good morning and may it please the court. Robert Katz on behalf of Applied Biokinetics LLC or ABK. ABK had constitutional standing here. ABK adequately pleaded that it owned the patents in suit. ABK adequately alleged that it had the sorts of rights that confer Article 3 standing. ABK pleaded that CVS infringed its patent rights. ABK also adequately pleaded that it suffered an injury. In fact, the district court was in a position to redress that injury. That is sufficient to confer constitutional... But doesn't it belong in Wisconsin? No, it certainly does not. If you had standing and the right to sue, according to the agreement, doesn't it belong in Wisconsin? No, I'd be happy to talk about the form selection clauses. There were two form selection clauses and each clause actually consists of three sentences. The first one is a governing law sentence. At the beginning of sentence two and three, it actually refers to under the agreement. So starting in sentence two for venue and jurisdiction, it refers to under the agreement. There was no litigation under the license agreement. The litigation in this case was between ABK and CVS. There were no claims of breach between ABK and CVS. So for that reason alone, just under the pure contract interpretation, neither one of the form selection clauses would apply. Of course, ABK also alleged and is pleading that the license had been terminated and the form selection clause would not survive termination. So that would be... Is that an issue for the Wisconsin court to The Wisconsin court would not be the court that would need to decide whether termination occurred just to figure out whether the form selection clauses applied. Courts regularly, when they see a form selection clause, the first question that they need to address is, does it apply to my case? And is it in effect? And that's before they get into the merits of underlying dispute. I'm a little unclear on what you're saying. You started off by saying, did you allege that the contract had been terminated, that the agreement had been terminated? We did. So is it your view that everyone should take that at face value and therefore, there doesn't have to be a determination about whether or not the contract is actually, the license has actually been terminated or not? I don't understand. No, I'm not saying that the inquiry and the district court could make the inquiry, but as a matter of in the first instance. Okay. So let's start there. So you allege the contract, it's been terminated. The district court here makes that inquiry. Why would it not be under the form selection clause, the Wisconsin court to make that determination? Because before determining whether a district court should transfer or terminate a case based on a form selection clause, they need to determine whether the form selection clause applies to their case. So they read the content of the clause. And sometimes the form selection clauses can be very narrow. They can just apply to specific issues. So the district court needs to make the determination. Does it apply to my case? In this instance, it should not, first of all, because what Judge Lurie asked, as a matter of contract interpretation, it doesn't apply to the issue that was being litigated. And then after that, you get into, does it survive termination? And that determination should have been made first by the Texas court. When the trial court determined to dismiss the case without prejudice to it being refiled after the case has been resolved by the Wisconsin court, what was the court referring to there? It's a little difficult to determine because there were no factual findings recited in the order. So when you read the order, the order also talks about a stay, the fact that they provided a stay so that ABK and MSM could negotiate this issue. So as a preliminary matter, the fact that if you accept the premise that constitutional standing cannot be cured, then presumably the district court was only looking at this from a statutory standing perspective, which should not lead to a dismissal on that basis because under Lexmark and under Lone Star, it's not correct to dismiss a case based on an issue of statutory standing. But with respect to what the court was referring to, it's a little difficult to tell because the same court in other instances where it was interpreting a license agreement, it actually did go in and examine, does the form selection clause apply to this case? What is the scope of the form selection clause? And does it survive termination, for example? Is it in effect? So you said a few minutes ago that we're supposed to assume that Judge Albright concluded there was no statutory standing and not unconstitutional standing because he gave the parties a chance to try to resolve this. Is that? Well, I was simply referring to the content of the order. I'm not saying that the court needs to presume that. However, if you do accept the constitutional standing cannot be cured, it either exists or does not exist at the outset of the case, then the fact that the court did provide a stay would suggest that the court- let's go in this together. We'll all sign off on it and go forward. That could, I don't know the word cure, but that could establish constitutional standing, right? I mean, I'm a little lost too because we don't know the basis upon which the court decided this, but I didn't conclude that constitutional standing was off the table because of the settlement. So I guess I was just wondering. Let me go back to your very first point where you started calling out the allegations in the complaint as if those by themselves were sufficient to establish standing, and I don't know that that's true. Are you familiar with our case in Cedars-Sinai? Unfortunately, I'm not. I was mostly referring to the holding of Lone Star, where in Lone Star, the quote was, as long as the plaintiff alleges facts that supported arguable case or controversy under the Patent Act, the court has both the statutory and the constitution authority to adjudicate. Well, Cedars-Sinai says in such a case where there's a factual basis, where there's a factual allegation, the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of this motion under 12B. And I think Cedars-Sinai preceded the case that you're talking about. So in this case, as I recall, there weren't factual challenges to many of the pleading allegations that actually get ABK into a position of having the sorts of patent rights that confer Article 3 standing. There was a license agreement. On the face of the license agreement, it's clear that it was a field of use license, did not confer all rights. There was a reservation of rights clause in the agreement. So ABK kept all the rights that it did not convey. When you say it's clear, I don't know on what basis you say it's clear. No one adjudicated that. That has not been adjudicated. And the other side didn't agree to it, right? So what's about the fear of use limitation you're referring to, the field of use limitation? Well, I'm simply referring to the plain language of the license agreement. And there were not factual findings recited in the order to determine how far the district court got with that. Even aside from the field of use question, ABK was the owner of the patent and still is. It did not assign the patent. It licensed it. And under Supreme Court's Waterman v. McKenzie case, unless all substantial rights are conveyed, then it's only a license, not an assignment. And a number of rights were retained. So you should have standing, correct? Yes. Because Mueller only had a right to sub license with your consent. And ABK reserved all rights not conveyed. And Mueller had a right to terminate without cause, which doesn't sound like an assignment, just sounds like a license. So ABK is still the owner, and in your view, has standing as So we should affirm the decision, but not for lack of standing, but because it belongs in Wisconsin. First of all, even if that was the outcome, assume for the moment, a different set of parties where, for example, the infringer didn't have a location in Wisconsin under 1400B, how would that even work? You would effectively have to have potentially two litigations, one to decide something under the license agreement, and then a different litigation to decide patent infringement. Our point is that you don't need to decide, you don't need to go and resolve anything under the license agreement to enable ABK to Well, does the other side not have the exclusive right under the license to make, use, and sell? Do they not have the exclusive right to sue under the license agreement? MSM does not have the exclusive right to sue. After the parties give notice to one another, MSM has 120 days, and if MSM decides or declines to sue, then ABK's right to sue vests at that That's not an exclusionary right to sue. That's not an exclusionary right to sue. The fact that ABK has to go and seek the consent of MMS means that ABK does not have exclusionary rights. That's a covenant. The fact that the contract says that they need to obtain consent, it's not a condition. Wouldn't you agree that ABK, it's the owner of the patent, but it assigned all exclusionary rights in the patent to MSM, and just by virtue of being the owner of the patent alone under this scenario, does not confer standing? Well, for all the reasons that Judge Lurie articulated, obviously I would disagree. In addition to that, ABK has the ability to sublicense. I would also add that MSM's ability to sublicense is actually limited to the rights conveyed. The license actually specifies that, and the rights conveyed are limited to a field of use. So even MSM's right to sublicense is limited. If we determine that ABK lacks exclusionary rights in the asserted patent, then the fact that ABK is the owner of the patent is irrelevant. Is that correct? It's not irrelevant under Lexmark and under Lone Star. ABK has sufficient rights to confer standing. I believe what Your Honor is referring to might be Section 281 in terms of the right to carry on a patent infringement suit, but it certainly would not impact constitutional state. Does it have the right to commence a suit? ABK does not have the right to commence a lawsuit. ABK certainly does. It's got to go seek the consent of its licensee first, which may not unreasonably be withheld. Is that a facts question or was it a side one? Well, that part of it is a fact question, but the question as to whether it's a covenant or a condition, I'm sorry, something that's, in other words, the right doesn't spring into life upon getting consent. ABK had the right and whether it... We're getting into the weeds of contractual interpretation. Why is it that the Wisconsin Court does not bear the authority to hear those issues? Two reasons. First, there is not litigation under the agreement. Again, litigation is between ABK and CVS and we also don't get there because the district court in Texas needs to decide whether the form selection clause survives termination. And that's something that district courts... Isn't that... This is all circular. You're saying it has to decide whether the form selection clause survives termination. That presumes that there has been a determination, that there has been termination. Well, the other way though to look at it doesn't necessarily make sense in terms of going into this form selection clause and having the court that specified there make the determination of whether the form selection clause even applies. Actually, in this case, there were two form selection clauses, right? So how do you adjudicate which particular court necessarily to send it to? So it's your view that only the Texas court had the authority to determine termination, and then if it decides it wasn't terminated, then the form selection clause applies to all of the other interpretive issues? The Texas court would determine sufficient facts to determine whether the form selection clause applies to the case in front of it. So that would be interpreting the contract and determining... Did that. The Texas court did exactly that and said, I'm going to... The things that belong in Wisconsin should go to Wisconsin, and I'm going to stay until that occurs. There were no such factual findings or... The order did not recite anything about what it determined about the contract, right? So it's... Well, I agree with you that not only in the order, but in other aspects of its opinion, the district court did not do a good job at articulating the basis for its decisions, and this is one of those areas, and I realize that it puts you in a hard position to try to hear. You're enumerating a number of disputes between the parties that are related to the contract, that are contractual in nature. It seems to me that given the form selection clause, that that needs to go to Wisconsin in order to determine if they have a proper venue, and then at that point in time, they decide the contractual issues. And I would disagree to the extent that it's regular practice for district courts to first analyze sufficient facts to determine whether the form selection clause applies to the case in front of it, and second, whether the form selection clause is in force, so whether it survives termination in this case. Counselor, you're well over your time, of course. We've asked a lot of questions. This case is obviously a mess. The parties have contractually tied each other in knots, and the district court has given us a half a page. Kick the can down the road, and we'll just have to try to work it out with your help and opposing counsel. We'll give you three minutes for rebuttal time, and let's hear from Ms. Gillis. Thank you, counsel. Counsel, doesn't ABK still own the patent, and did it retain substantial rights such that it granted only a license and not an assignment, and so it still owns the patent, and had the right to sue? Your Honor, ABK is still the registered owner of the patents, but under the license agreement at issue here, at Appendix 3195, together with the First and Second Amendments, all substantial rights, all exclusionary rights in those asserted patents, were conveyed to MSM. The language of the agreements themselves say that, exclusive right to make, use, have, and sell, including without limitation. Opposing counsel, Mr. Katz, attempted to narrow the license on its face. It's not narrow. It's very broad. But MSM cannot sue without ABK's consent, right? That is not correct. The Second Amendment at issue gives MSM the exclusive right to sue. Only if MSM declines to bring a suit under the asserted patents can ABK seek consent to bring suit. In this case, no consent by MSM was given. That's at Appendix 3292. I'm sorry. There also, consent cannot unreasonably be withheld? There is that language. And that has to be adjudicated. Correct. And just to go to sort of where you started with Mr. Katz at the outset of the day, and also to address the concise nature of the judge's order in Texas at Appendix 1. Even though that order is about a page, the court heard extensive argument on multiple motions. Do we know what basis the court, basis upon which the court decided to dismiss without prejudice? Was it constitutional standing? Was it statutory standing? What was the basis for the venue adjudication? We would concede that the court's order is supported by lack of constitutional standing, lack of statutory standing, and improper venue. But we don't know what the district, we don't know whether the district court decided it unconstitutional. He didn't specifically say, but the guidance we have is CBS's motion was a 12B1 motion seeking dismissal for lack of constitutional standing and lack of subject matter jurisdiction. Okay. What do you say to your friend where your friend started in this case on that point? Was that the factual allegations asserted in the complaint were sufficient under 12B1 and no further adjudication was necessary? Your Honor, they actually were not. In the original complaint that was filed in this case at appendix two and exemplar case number 555, ABK made reference in paragraph 37 to MSM as a licensee and showed photographs of MSM's products marked with the asserted patents in the case. So as to say, CBS was on notice of these patents by virtue of this licensee's marking. The license agreement was also recorded at the patent office. So if we were to look as an accused defendant, which we did, and go to where you record information about who has rights, this license agreement was also recorded. So that original complaint filed against CBS, held MSM out as his licensee, put up photos of MSM products marked with the patents, and made allegations to support willfulness based on those patent markings. It was only when they admitted... I'm sorry. Let me add, just moving on, I take your point. So what, in your view, since the district court was not clear or direct or detailed in terms of what actually has to happen, what is your view? What has to go, what belongs under the former selection clause in field of use, and we've got whether consent was unreasonably withheld? I think those are the three big issues. Actually, there's an opening question. MSM contends only it has the right to assert these patents, that the license agreement is still in force, and that the only party that could sue under the asserted patents is MSM. Okay, that assumes that license agreement is in force. Right. So I think everybody has to adjudicate whether or not it's been terminated. And the adjudication of that should be in Wisconsin. That is something that should have occurred because these parties prior to CBS being sued, there is correspondence that's been made of record that the court had in front of it as part of not only CBS's pleadings, our motion to dismiss under 12B1, B3, and B7, and all of the evidence that we put in, and the cases that we cited in our brief, Patterson being one, Beverly being another, says the court can consider those evidentiary materials when jurisdiction is in play. Wait, so you're saying, but it should have gone to the determination on termination should have No, no. The court saw in our evidentiary materials that there was a live dispute between MSM and ABK as to who could assert the patents. And the court found in its order, it says there's a dispute between these two parties. And under their agreement and the forum selection clause in their agreement, their dispute as to who gets to sue must be determined by a Wisconsin court. ABK also brought MSM into the case when they filed their first amendment complaint. Okay, what about the other issues? What does the issue, the question of whether or not, assuming the agreement was not terminated, does the question about whether or not consent to sue was unreasonably withheld, does that issue belong in Wisconsin? All of it belongs in Wisconsin because it's all based on language in the agreement. If the parties, sorry, sorry, sorry. Obviously, the court expected at some point in time to receive the case back with parts of it. It dismissed without prejudice, correct? He dismissed without prejudice. And if you read the transcript, he says, if you're able to cure standing, then you can refile after standing is cured. That is in the transcript, I think, at page 3957 and 3958. It's also in the order itself at appendix one. Should we take that to mean that the trial court understood that only the Wisconsin court could resolve the issue of standing, and that's the only issue before the Wisconsin court? What I think you can take it to understand is that only the Wisconsin court can resolve whether or not, as between ABK and MSM, who has the right to assert the patents. And if that may determine whether or not consent was reasonably withheld by MSM, and if you look at the two declarations that the CEO of MSM submitted to the court, both at appendix 3464 and at appendix 3853, MSM details why consent was withheld in this case. Again, those are issues for a Wisconsin court to decide. Is the agreement still enforced? Yes or no. If it is still enforced, can only MSM bring a lawsuit against anyone, or is ABK allowed to? Did MSM unreasonably withhold consent, given the reasons that MSM put in testimonial declarations that we cited to the court? So all of those issues— So all of your suggestion is that, in response to Judge Raina's point, is that you don't think that Wisconsin is going to give them the ability to ever come back to the Texas court? I don't think so. I think— Is that something for Wisconsin as well? It's also for Wisconsin. I also think the argument is without merit on the face of the agreement itself, but a Wisconsin court certainly can determine, based on the language, whether it's a field abuse or is limited. And certainly nothing about— If Wisconsin goes the other way, or whichever way the Wisconsin court goes, what's the appellate review for the Wisconsin determinations on the contract? Well, I think whichever party wins or loses has to go through the appellate system in Wisconsin to get final resolution of the issue. When you say Wisconsin, I guess the agreement, as I understood it, didn't specify whether we're dealing with federal or just—or state courts here, right? It just said, yeah, courts sitting in Dade County, Wisconsin. So whatever is relevant. So it doesn't come back here? I wouldn't think so. I would think it would stay within the appellate system within Wisconsin. Which court is hearing the CVS litigation now? That's in Wisconsin, correct? No. ABK sued CVS and the Western District of Texas District Court in front of Albright. Now, how does this get to Wisconsin? The Western District of Texas didn't transfer it to Wisconsin. And so who can sue in Wisconsin? It's the same unanswered question, isn't it? It actually isn't, Your Honor. The CVS lawsuit cannot even be brought in the first instance because we don't know who the proper plaintiff or plaintiffs are. The plaintiff that sued CVS in the Western District of Texas was ABK. MSM said ABK didn't have the right to sue anyone, including CVS. One, because the agreement gives only MSM the right to sue. ABK can only bring suit with consent from MSM, which MSM did not give. And that was a matter of record. So in the first instance, ABK and MSM have to sort out their agreement. And the sorting out of that agreement, according to the agreement itself, must happen in Wisconsin. They contractually agreed to litigate disputes there. But how does it get to Wisconsin? Someone has to bring an action to Wisconsin. ABK, if it wants... ABK is the one that is claiming termination of this lawsuit. So you're just saying that... ABK needs to sue MSM in Wisconsin over interpretation of the agreement. Since Judge Albright dismissed without prejudice, the only way that AB can get back into the Texas court in order to sue CVS would be to prevail in the Wisconsin court on its allegations about the license agreement, correct? Yes, or through some type of resolution with MSM wherein it gets all of its rights back. But your client sits back because nothing is not going forward in the absence of Wisconsin ruling in favor of your friend. That is correct because standing must be right at the outset of the lawsuit. And even if ABK were to come back, it's not going back to day one because they would only fix or cure standing as of the day they get their rights back. They don't get the rights back as the day they first sued us. They get the rights back if and when there's a resolution with MSM or a Wisconsin court determines somehow that they have some level of constitutional... some right under the assertive patterns to bring suit. They have a declaration of rights under the agreement coming out of the Wisconsin court. Yes, they do. Yes, they do. There's other litigation. You may not know about it, so that's fine. But there's other litigation going on that involves some of the similar issues, right? Yes, I actually am aware of the other litigation as well. Okay, so that's either going to get here or it's not going to get here, right? So we also believe that the related litigation in Delaware should not be going forward because ABK lacks standing, constitutional standing, to sue under the assertive patents. Counselor, just to be clear, if there's full-blown litigation in Wisconsin, what is left for the district court of Texas to hear? There is nothing for the district court in Texas to do now because the CBS cases have been dismissed. The Texas court or litigation only gets revived there if ABK can establish that it has the exclusionary rights to assert these patents. I don't know that ABK gets there or if miraculously MSM decides they want to sue someone, which if you read the declarations that are in the record, they say the lawsuits against CBS have no merit because the products at issue aren't covered by these assertive patents. I mean, that's the real problem here is that these patents don't cover the products that have been accused. And that's where ABK and MSM had their dispute because MSM, if you read Mr. Mueller's two declarations, he said, we agree, we knew these patents only covered a very specific type of product, this PFT tape product that MSM sold. It's the only product that MSM sells and has ever sold that's marked with these patents. MSM has been selling kinesiology products since 2010. They've got another 41 products, kinesiology tape products, just like the ones that issue in the CBS cases in another litigation. Those products have never been accused of infringement. They've never been marked with these patents. So you think we should affirm the dismissal by the Texas court on which ground? You can affirm the dismissal for lack of standing. You could also separately affirm it for improper venue, but the lack of standing is clear. And you're talking about constitutional standing. Lack of constitutional standing. That is certainly what we argued. We don't believe they have statutory standing and we raised in a footnote that we would raise statutory standing later. But certainly the case law, Volpel, Wyeth, other cases we cited in our brief would support no constitutional standing because MSM has all of the exclusionary rights. In fact, the retained rights that Mr. Katz spoke about. Well, they don't have all substantial rights. That's the test of Waterman versus McKenzie. All substantial rights. Now, they retained rights not expressly granted. Did they condition the right to sublicense only with consent? There are a number of limitations to what was granted. So the Volpel Federal Circuit case from 1991 addresses some very similar retained rights by a patent owner. I remember that case. I would expect that you would, Your Honor, as the author of that case. So that case at page 875, retaining a veto right on sublicensing, a reversionary interest in the patents, meaning if the agreement is terminated, the rights go back to the patent owner, or even the right to collect infringement damages if there is a lawsuit. Those type of retained rights under Volpel do not confer constitutional standing in the patent owner. Under that case, MSM still would have the exclusionary rights and would still be the only party with constitutional standing. We don't have to. Standing doesn't have to be conferred on the patent owner. It retains standing unless it has granted all substantial rights to the licensee constituting an assignment, right? That is right. And here, again, under Volpel, or if we look at Speedplay, another Federal Circuit case from 2000, or Wyup. So Wyup was Judge Lynn's case. Speedplay, I think, was Judge Bryson. The exclusionary rights there were- We decide cases as a panel. I know. Even though one person is the author. Understood. Understood. Absolutely, Your Honor. I remember the author of the opinion, but yes, always a panel. So in the Speedplay decision from 2000, it was important that the right conveyed to the licensee was the right to bring a lawsuit, also the right to grant sublicenses. MSM had both of those rights. And in one of those cases, I think it was a Speedplay case where, again, you couldn't convey a license without permission from the patent owner, which permission could not be unreasonably withheld. Speedplay still considered that licensee having that exclusionary right. And the whole point is that if you have a patent owner like ABK here, that even if they brought suit, the fact that another party, MSM, could grant a sublicense to the accused infringer, that is what makes MSM's rights here exclusionary. But isn't that only with consent? Which shall not be unreasonably withheld. Which, again, Speedplay, Vaubel, Wyup, the cases we cited in our briefs deal with some very similar contract language. And the licensee comes out as the one with exclusionary rights. The justice once said that the Constitution is not a suicide pact. That idea seems to come to mind concerning this contract. No, I don't think so. I don't think so. I mean, again, I think it's two contracting parties coming together. ABK gave MSM all the power to go out and enforce the patents because they were getting royalties under that contract. ABK contractually did that. And again, if you review the MSM declarations, they're very enlightening as to what went awry here and why we stand before you today. But I'm also standing before you today arguing on behalf of the appellees. So the fact that MSM, like CVS, is also seeking to affirm the dismissal of the CVS cases is very telling. Counsel, we've given you extra time, just like we gave Appellant. So thank you very much. Thank you very much, Your Honors. Appreciate it. Appellant has three minutes for rebuttal. Your Honors, one of the issues that CVS raised with respect to pleading was CVS wanted to know who owns the patents. Well, when CVS came to us and said, well, we're going to file this motion to dismiss because maybe you don't have all the rights. Well, we basically said, OK, well, fine. We'll join the other party. And if you look at Rule 21, Rule 21 just, I think, says, Miss Joinder is not a reason to dismiss. Well, they filed their motion to dismiss anyway. But when you look at the parties in this lawsuit in Texas, everybody's there, right? We've got MSM, CVS, and ABK. All the parties are there. CVS is not at risk of being sued. The only question then comes down to, within this contract between ABK and MSM, who can sue? And it's very clear in the contract that the parties give notice to each other. Then there's 120 days for MSM to sue. If they don't, if they decline, then at that point, ABK's rights to sue vest. They do not vest upon permission. They vest upon the 120 days. The permission is simply a covenant. And it's quite clear it's not a condition precedent, right? The right is vested upon 120 days after notice. And Judge Prost asked about, what should we decide here? Well, in the interest of not having this case come back, things, for example, is this an exclusive license agreement? Is it limited to a field of use? Those are helpful findings under the contract. The other helpful finding would be, is this a condition precedent or a covenant? We wrote in our brief, it's a covenant. There is no meaningful rebuttal to that. And we maintain that it's simply a covenant. So, ABK waited its 120 days and it had the right to sue. If MSM believes that ABK breached, it's welcome to sue ABK or counterclaim. But in any instance, within the meaning of the contract, ABK had all rights to sue. And with respect to going to Wisconsin for contract interpretation, I don't believe that that's actually contemplated by the form selection clause. The form selection clause for the venue and jurisdiction aspects, it says litigation under the agreement. And again, no parties to that agreement are accusing one another of breach. So, for that additional reason, the form selection clause should not come into play. The district court in Texas could resolve this just based on the contract interpretation of the contract in front of them. Thank you, counsel. We know that cases are sometimes settled on the courthouse steps going in. Maybe they can be settled on the courthouse steps going out. Thank you, Your Honor. The case is submitted.